## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22227-Civ-WILLIAMS/TORRES

JAMES STORM,

      Plaintiff,

v.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINES *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

      This matter is before the Court on Carnival Corporation's d/b/a Carnival Cruise Lines ("Defendant" or "Carnival") motion to dismiss [D.E. 16] James Storm's ("Mr. Storm" or "Plaintiff") first amended complaint ("FAC"). [D.E. 14]. Plaintiff responded on August 14, 2020 [D.E. 17] to which Carnival replied on August 21, 2020. [D.E. 20]. Therefore, Carnival's motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Carnival's motion to dismiss should be **DENIED**.[1]

---

[1]    On August 25, 2020, the Honorable Kathleen Williams referred Carnival's motion to the undersigned Magistrate Judge for disposition. [D.E. 22].

# I. BACKGROUND

Plaintiff filed this action on May 28, 2020 [D.E. 1] for injuries sustained onboard the *Carnival Miracle* while participating in a shore excursion on July 9, 2019. Plaintiff alleges that, as the excursion neared its end, crewmembers called passengers back onto the excursion boat. Plaintiff returned to the boat, dried off, and told his wife that he needed to use the restroom below deck. Plaintiff began to walk down stairs to his cabin when he suddenly realized that the floor was wet and he slipped. His right middle finger then became caught on something sharp. As he fell, the top portion of his middle finger was severed from the rest of his hand. One of the crewmembers discarded the severed portion of the finger in the trash and the captain of the excursion told Plaintiff that it could not be re-attached. The captain then applied first aid and Plaintiff boarded the cruise ship.

Once onboard the cruise ship, Carnival's physician evaluated Plaintiff and continued treatment on his finger. Plaintiff reported that he was in extreme pain and an x-ray was taken. The physician cleaned the wound, gave Plaintiff a tetanus shot, and instructed him to take some powerful pain medication. Carnival later administered antibiotics intravenously and gave Plaintiff oral medication to take twice daily for the remainder of the cruise. Carnival advised Plaintiff to elevate his right arm/hand while resting and during sleep. Plaintiff returned to the ship's medical clinic for follow up treatment and wound cleanings over the next several days. After the cruise, because Carnival and the excursion operators were negligent

and caused substantial injuries, Plaintiff filed a twelve-count complaint for damages under federal maritime law.

## II. APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

3

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2, (2012).  The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III. ANALYSIS

Carnival's motion seeks to dismiss several counts[2] in Plaintiff's FAC because many of them fail to state a claim for which relief can be granted.  Plaintiff opposes each of Carnival's arguments with the only exception being the allegations presented in support of Plaintiff's third-party beneficiary claim in count 8.  Plaintiff agrees that this count should be dismissed as moot and that he withdraws these allegations against Carnival as they are more appropriately directed against the excursion companies.[3]  However, other than count 8, Plaintiff takes the position that Carnival's motion is both legally and factually incorrect and that the motion to

---

[2]     Plaintiff's FAC includes allegations for negligence in count 1, misleading advertising in violation of Florida Statute § 817.41 in count 2, negligent misrepresentation in count 3, negligent selection and/or retention in count 4, negligent failure to warn in count 5, negligence based on apparent agency or agency by estoppel in count 6, negligence based on joint venture in count 7, a third-party beneficiary claim in count 8, vicarious liability for the negligence of Carnival's staff in count 9, apparent agency for the acts of Carnival's staff in count 11, and assumption of duty in count 12.  The FAC failed to include a count 10.

[3]     Because Plaintiff agreed to withdraw his third-party beneficiary claim against Carnival, the motion to dismiss count 8 should be **DENIED as moot**.

dismiss should be denied in its entirety.  Before we turn to the merits, we must consider the principles of general maritime law to inform the analysis that follows.

### A.    *Principles of General Maritime Law*

Claims arising from alleged tort actions aboard ships sailing in navigable waters are governed by general maritime law.  *See Keefe v. Bahama Cruise Line, Inc.*, 861 F.2d 1318, 1320 (11th Cir. 1989).  Absent an applicable statute, general maritime law is "an amalgam of traditional common-law rules, modifications of those rules and newly created rules" drawn from state and federal sources.  *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986).  Maritime law may be supplemented by state law principles so long as application of the state law does not place "substantive admiralty principles" at risk.  *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1426 (11th Cir. 1997); *see also Yamaha Motor Corp., U.S.A., v. Calhoun,* 516 U.S. 199, 210 (1996); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953).  Given these general maritime principles, we consider the parties' arguments in turn.

### B.    *Negligence Against the Excursion Entities (Count 1)*

To begin, Carnival argues that count 1 of the FAC should be dismissed because it fails to allege sufficient facts showing that Carnival knew or shown have known of any dangerous condition to give rise to a duty to warn.  There is no need to consider any arguments with respect to count 1 because the allegations are not directed against Carnival.  Instead, count 1 takes aim at the excursion entities. Because Plaintiff does not allege any liability against Carnival in count one, there is

nothing to further consider in concluding that Carnival's motion to dismiss count 1 should be **DENIED**.

### C. *Misleading Advertising (Count 2) and Negligent Misrepresentation (Count 3)*

Next, Plaintiff alleges in counts two and three that Carnival made and disseminated false or misleading materials regarding the safety of the shore excursion. Claims arising under Florida Statute Section 817.41 and Florida common law negligent misrepresentation must allege the following four requirements:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352-3 (S.D. Fla. 2016) (citing *Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)); *see also Smith v. Mellon Bank*, 957 F. 2d 856, 858 (11th Cir. 1992) ("In order to prove a violation of Section 817.41, Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement.").

Negligent misrepresentation is subject to the heightened pleading standard of Rule 9(b) and requires that a plaintiff establish "the 'who, what, when, where, and how' of the fraud." *Ceithaml*, 207 F. Supp. 3d at 1353 (citing *Garfield v. NDC Health Corp.*, 466 F. 3d 1255, 1262 (11th Cir. 2006)); *see also Ziemba v. Cascade*

*Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("Rule 9(b)'s heightened pleading standard requires that the complaint set forth . . . precisely what statements were made in what documents or oral representations."); *see also Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *7 (S.D. Fla. June 5, 2012) (dismissing an allegation of misleading advertisement and negligent misrepresentation because the complaint was not temporally precise).   Thus, when pleading a negligent misrepresentation claim, a cause of action must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)).[4]

Carnival argues that counts 2 and 3 should be dismissed because Plaintiff never made clear "how many times he viewed Carnival's website or which materials

---

[4]     Courts have applied Rule 9(b) to a wide-range of fraud claims, whether the allegations stem from fraudulent concealment, common law fraud, or a variation thereof.  *See, e.g., Hendley v. Am. Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir. 1988) (concluding that Rule 9(b) was not satisfied when plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud"); *Friedlander v. Nims*, 755 F.2d 810, 813–14 (11th Cir. 1985) (concluding that although a Rule 9(b) dismissal is a "severe sanction," plaintiff's decision to ignore the court's "sound and proper" recommendations about how to correct the pleading deficiencies concerning the scope of an employee's authority warranted dismissal); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 970–71 (5th Cir. 1981) (affirming Rule 9(b) dismissal because "the complaint includes only conclusory allegations of fraudulent concealment").

he looked at each time he visited." [D.E. 20 at 4]. While Plaintiff may have identified certain portions of Carnival's website that he observed, Carnival asserts that Plaintiff failed to state the number of times that he did so and failed to put Carnival on notice of any misstatements from other promotional materials. The problem with this argument is that we have not found any case – and Carnival failed to reference any – that imposes such a heightened requirement. Plaintiff alleged, for example, that he viewed Carnival's website on June 10, 2019 and he identified the content of each misstatement and how they misled him. Carnival suggests that Plaintiff needed to go even further and allege how many times he viewed Carnival's website on the same day. That assumes, however, that Plaintiff observed the website more than once on June 10, 2019. But, nothing in the pleading makes that allegation. And even if Plaintiff did make that allegation, it is unclear how he failed to put Carnival on notice of the misstatements that deceived him.

Carnival then argues that the FAC contradicts itself because Plaintiff alleges that Carnival operates its own shore excursions. Carnival contends that this is clearly incorrect because its website states that local providers are selected to operate shore excursions. Carnival also references the cruise ticket contract where it provides that excursion operators are independent contractors. Given this evidence, Carnival concludes that there is no credible way to allege that Carnival should be responsible for misleading advertising and negligent misrepresentation.

While Carnival's arguments might not be entirely without merit, this is more of a factual issue to be considered on a motion for summary judgment.  As the FAC stands now, it includes all the required elements to state a claim in counts two and three.  The allegations contain the time and place of each statement, the specific content of those statements, and the manner in which they were misleading.  Given that this is all that is required to meet the heightened pleading requirements under 9(b) and all the other elements are otherwise included, Carnival's motion to dismiss counts 2 and 3 should be **DENIED**.

### D.    _Negligent Selection and Retention (Count 4)_

Turning to count 4, Plaintiff claims that Carnival is liable for the negligent selection and retention of the excursion operators.  To establish a claim for negligent hiring or retention against a vessel owner, a plaintiff must establish that the excursion company "was incompetent or unfit to perform the work, that the [vessel owner] knew or reasonably should have known of the particular incompetence or unfitness, and that such incompetence or unfitness proximately caused [her] injuries." _Brown v. Carnival Corp._, 202 F. Supp. 3d 1332, 1339 (S.D. Fla. 2016) (quoting _Gayou_, 2012 WL 2049431, at *5).

Carnival takes issue with Plaintiff's allegations because they fail to include any factual support that Carnival was aware that the tour operators were unfit to operate the excursion.  This is a feeble argument because the FAC includes every required allegation to state a claim.  Specifically, in paragraph 66, Plaintiff alleges that the shore operator was unfit because it failed to (1) hire adequate crew

members to ensure passenger safety, (2) keep the excursion boat in good working order, (3) warn passengers of the condition of the boat during and after water activities, (4) monitor or supervise passengers, (5) prevent passengers from overcrowding the excursion boats, and (perhaps most damaging) (6) clean and dry the boat throughout the excursion.  [D.E. 14 at ¶ 66].

Plaintiff then alleges that Carnival knew or should have known of the operator's unfitness because of prior customer injuries involving substantially similar excursions, inspection reports, reviews, complaints, and other reports alerting Carnival that the excursion was dangerous to passengers:

a. Prior incidents involving Carnival passengers injured on the subject excursion involving the same or substantially similar excursions operated by the Excursion Entities; and/or

b. Carnival's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion; and/or

c. Carnival's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or

d. Thoroughly inquiring into the Excursion Entities' certification(s), reputation, reviews, prior incidents, years in operation, and/or history in working with other cruise lines; and/or

e. Examining the complaints and/or reviews of prior Carnival passengers who had participated in the excursion; and/or

f. Periodically requesting and examining safety history reports from the Excursion Entities as well as periodically sending Carnival's own staff to visit the excursion site(s) and evaluate the excursion experience.

*Id.* at ¶ 67.

Carnival suggests that these allegations are insufficient because, while Plaintiff referenced reviews about the excursion experience from former passengers, that does not show that Carnival had knowledge that the excursion operators were unfit.  But, in reviewing the allegations above, that argument overlooks the fact that there were complaints and other prior incidents involving the same or substantially similar excursions.  And even if Plaintiff only relied on passenger reviews from prior Carnival passengers to show notice of the shore excursion's unfitness, Carnival fails to explain why that is insufficient.

Carnival then argues that Plaintiff failed to include a "single detail about these complaints such as when they occurred, who was injured, what was the injury, and most importantly, how Carnival would have been aware of them."  [D.E. 16 at 9].  This argument is unavailing because Plaintiff had no duty to provide such detailed allegations to state a claim for negligent selection and retention.  It appears that Carnival seeks to impose a heightened pleading requirement – much like a claim that arises under Rule 9(b) – to a negligent retention/selection claim, yet Carnival fails to rely on any case that has required anything more than the detailed factual allegations already included in the FAC.  For these reasons, Plaintiff has alleged sufficient facts and Carnival's motion to dismiss the negligent retention and selection claim in count 4 should be **DENIED**.

### E.    *Negligent Failure to Warn (Count 5)*

Plaintiff alleges in count 5 that Carnival was negligent for failing to warn him of the dangers associated with the shore excursion.  These dangers include the

failure to inspect or monitor excursion operators, to verify that the excursion was reasonably safe, to adhere to high safety standards, to inform passengers that the shore excursion was dangerous, and to communicate with customers that the excursion operators carried inferior insurance policies when compared to Carnival.

Carnival argues that count 5 should be dismissed because Plaintiff failed to plead sufficient facts in support of these allegations.  Carnival contends, for instance, that Plaintiff failed to allege how Carnival had anything to do with the shore excursion.  Carnival also suggests that Plaintiff's allegations fall short because there are not enough facts that it had notice of any dangerous condition. Specifically, Carnival takes issue with Plaintiff's reliance on a cruise line's inspection process as being sufficient to establish notice because courts in this district have found this to be inadequate.  And while Plaintiff further alleges that Carnival should have been on notice due to prior accidents, Carnival asserts that imputing knowledge of prior events involves nothing more than speculation and guesswork – both of which cannot be used to withstand a motion to dismiss.  Thus, Carnival reasons that count 5 should be dismissed because Plaintiff's allegations of notice are conclusory and fail to include the required factual assertions to state a plausible claim for relief.

Under federal maritime law, a plaintiff claiming negligence must allege facts showing that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm."

*Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citing *Zivojinovich v. Barrier*, 525 F.3d 1059, 1067 (11th Cir. 2008)). These elements mean that a cruise line only owes a duty of ordinary reasonable care under the circumstances, and that "as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition." *Keefe, Inc.*, 867 F.2d at 1322.

In the shore excursion context, the care owed to passengers by common carriers includes a duty to warn of "known dangers" existing "beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Chaparro*, 693 F.3d at 1336. This requires "actual or constructive notice of the risk-creating condition" and the duty of care encompasses only "those dangers which are not apparent and obvious to the passenger." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322-23 (S.D. Fla. 2011) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006)).

Based on a thorough review of Plaintiff's allegations, none of Carnival's arguments have merit because there are several ways that Carnival had notice of the risk-creating condition (i.e. the wet stairs). The most impactful allegation that Carnival had notice is when Plaintiff alleges that – before he went below deck to use the restroom – Carnival crewmembers used the same set of stairs that led to his downfall. [D.E. 14 at ¶ 28]. Plaintiff also alleges that prior passengers put Carnival on notice because of the many complaints related to inadequate safety

protocols.  And going further, Plaintiff asserts that knowledge of these conditions imputed notice for four additional reasons:

> (a) Carnival's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having Carnival's representative(s) take the excursion; (b) Carnival's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) Prior incidents involving Carnival passengers injured on the subject excursion involving the same or substantially similar excursions operated by the Excursion Entities; and/or (d) Examining the complaints and/or reviews of prior Carnival passengers who had participated in the excursion.

[D.E. 14 at ¶ 76].

Carnival nonetheless maintains that more facts are needed to sustain a claim for negligent failure to warn.  Yet, it is unclear what more Plaintiff should have alleged.  Plaintiff gave approximately 6 ways (if not more) that Carnival had notice of the wet stairs with the most forceful being the crewmembers using the same set of stairs prior to Plaintiff's fall and their failure to warn him of the dangerous condition.  Because there is no requirement for a plaintiff to allege additional facts than the ones presented in the FAC and Rule 8 only requires allegations to "raise a reasonable expectation that discovery will reveal evidence" corroborating a claim, *Twombly*, 550 U.S. at 570, Carnival's motion to dismiss count 5 should be **DENIED**.

### F.   *Negligence Based on Apparent Agency or Agency by Estoppel (Count 6)*

Plaintiff's next allegation is that Carnival should be vicariously liable for the alleged negligence of the excursion operators in count 6 under a theory of apparent

agency or agency by estoppel.  "[A]pparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014) (citing *Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co.*, 733 F.2d 833, 836 (11th Cir. 1984) (applying Florida law)).

Apparent agency is so similar to agency by estoppel that, when interpreting Florida law, the Eleventh Circuit does not even consider the two separately.  *See Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1078 n.15 (11th Cir. 2003) ("Whetstone also argues that the doctrine of agency by estoppel applies.  That doctrine, however, is so similar to apparent authority that there is no significant difference between them, we do not consider agency by estoppel separately") (internal citation and quotation marks omitted).  That is, "[u]nder Florida law, agency by estoppel . . . embraces the primary elements of a representation by the principal, reliance on the representation by the claimant, and a change of position by the claimant in reliance on the representation." *United Bonding Ins. Co. v. Banco Suizo–Panameno, S.A.,* 422 F.2d 1142, 1146 (5th Cir. 1970) (citations omitted).

Plaintiff meets all the requirements to state a claim for apparent agency and agency by estoppel claim because he alleges that Carnival manifested a relationship

15

by "allowing its name to be used in connection with the advertising of the excursion entities, arranging the shore excursion, marketing the excursion using Carnival's logo, selling the shore excursions from a desk aboard the ship, and recommending that Plaintiff not engage in other tours sold through companies other than Carnival." [D.E. 14 at ¶ 80]. "Several other courts of this district have found similar factual allegations sufficient for an apparent agency claim to survive a motion to dismiss," and the same reasoning applies here. *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1396 (S.D. Fla. 2014) (citing cases).

Putting that aside, Carnival claims that count 6 should be dismissed for a separate reason because both causes of action require, as an element, reasonable reliance. Carnival states that, Plaintiff's allegations are anything but reasonable because its website specifically mentioned that local providers – not Carnival – operated the shore excursions. Carnival also points to Plaintiff's ticket contract because that shows that the shore excursion entities operated as independent contractors. And because both of these items undercut any possible agency relationship, Carnival concludes that count 6 should be dismissed.

Carnival's position is unpersuasive because Eleventh Circuit precedent holds that "the existence of an agency relationship is a question of *fact* under the general maritime law." *Franza*, 772 F.3d at 1235-36 (collecting cases) (emphasis added). Carnival's argument is also unavailing because the cases it referenced in support of its motion to dismiss were almost all decided on a motion for summary judgment and after a complete development of the factual record. *See, e.g., Wolf v. Celebrity*

*Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017) (affirming district court's decision to grant summary judgment in cruise line's favor); *Smolnikar*, 787 F. Supp. 2d at 1325 (granting cruise line's motion for summary judgment on the issue of apparent agency); *Ceithaml v. Celebrity Cruises, Inc.*, 2018 U.S. App. LEXIS 17151, at *10-11 (11th Cir. June 25, 2018) (affirming district court's entry of summary judgment for cruise line).  That is, while Carnival invites the Court to consider the content on its website and the underlying ticket contract, we decline to resolve a factual dispute on a motion to dismiss because releases of liability are more properly considered affirmative defenses.  And a determination on an affirmative defense should be reserved for summary judgment or trial.  *See Ceithaml*, 207 F. Supp. 3d at 1356 ("Celebrity argues that Ceithaml's apparent agency theory, even if successfully pled as a negligence claim, must fail because the shore excursion ticket, shore excursion brochure, and passenger ticket contract all release Celebrity from liability.  However, consideration of these releases would be premature at the motion to dismiss stage as the release of liability is more properly considered an affirmative defense.") (citing Fed. R. Civ. P. 8(c)(1)).  As such, Carnival's motion to dismiss count 6 should be **DENIED**.[5]

### G.     *Joint Venture (Count 7)*

Plaintiff alleges in count 7 that Carnival is vicariously liable for the negligence of the excursion operator because the two entities were engaged in a

---

[5]     It would also be inappropriate to consider Carnival's website and the ticket contract on a motion to dismiss because neither is undisputed nor are they "so central to Plaintiff's claim as to compel the Court to stray from the four corners of the complaint at this stage of the litigation." *Aronson*, 30 F. Supp. 3d at 1397.

joint venture.  Although there is technically no cause of action for joint venture, Plaintiff's claim should be construed as an alternative theory for negligence liability.  *See Ash v. Royal Caribbean Cruises Ltd.*, 2014 WL 6682514, at *8 (S.D. Fla. Nov. 25, 2014) ("There is no cause of action for 'Joint Venture,' but, as with Count III, it is clear from review of the substance of the count that Plaintiffs' Count IV simply advances another alternative theory for *negligence* liability").  A joint venture theory of negligence liability requires a plaintiff to plead facts showing: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter of the venture; (4) a right to share in profits; and (5) a duty to share in any losses which may be sustained."  *Lapidus v. NCL Am. LLC*, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012) (citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir. 1990)).  Importantly, these elements are treated as "only signposts, likely indicia, but not prerequisites" to stating a claim.  *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208, 211 (11th Cir. 1991)).

Carnival argues that count 7 fails to state a claim because, although the FAC gives lip service to each of the required elements, it fails to include any supporting facts.  Carnival then references an independent contractor agreement between the cruise line and the shore operator because it states that the relationship between the parties was *not* a joint venture:

> 11. *Relationship of the Parties*: *Operator's relationship with Carnival during the term of this agreement shall be that of Independent Contractor.* Operator shall not have, and shall not represent that it has, any power, right or authority to bind Carnival or to assume or

create any obligation or responsibility, express or implied, on behalf of Carnival or in Carnival's name. *Nothing related in this agreement shall be construed as constituting Operator and Carnival as* partners, or as treating the relationship of employer and employee, franchisor and franchisee, master and servant or principal and agent or *joint venturers* between the parties hereto. Operator shall not represent, communicate or imply in any advertising, literature, announcement or by any other means that it is anything other than an Independent Contractor.

[D.E. 16-4 at ¶ 11] (emphasis in original).  Because this agreement undermines Plaintiff's allegation that Carnival and the excursion operators worked as a joint venture, Carnival concludes that count 7 should be dismissed with prejudice.

It is undisputed that the independent contractor agreement states that Carnival and the excursion operators did not agree in writing to operate as a joint venture.  Carnival reasons that this should be the end of the inquiry and that count 7 should be dismissed.  But, a court's review at the motion to dismiss stage is generally limited to the four corners of the complaint with the only exception occurring when: (1) a plaintiff refers to a document in the complaint; (2) the document is central to its claim; (3) the document's contents are not in dispute; and (4) the defendant attached the document to its motion to dismiss.  *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir. 2007) (internal citation omitted).

Here, the independent contractor agreement does *not* meet this exception because the FAC never makes reference to an independent contractor agreement. The pleading only states that "Carnival and the Excursion Entities entered into *an agreement* where Carnival would sell the subject excursion to its passengers and the

Excursion Entities would operate the subject excursion."   [D.E. 14 at 35-36] (emphasis added).   Whether this "agreement" is the same as the independent contractor agreement is unclear and we have no basis to make that conclusion on a motion to dismiss because a joint venture, similar to a partnership, can be created by express or implied contract. *See Williams v. Obstfeld,* 314 F.3d 1270, 1275–76 (11th Cir. 2002).

Relying on the independent contractor agreement at this stage would also be inappropriate for a separate reason because Plaintiff calls into question the authenticity of the contract and it is unclear whether this agreement was in effect during at the time of Plaintiff's injury.   And even if we put aside those problems, Plaintiff claims that his allegations are aimed at conduct that Carnival and the excursion operators entered into *subsequent* to the written agreement that Carnival relies upon – meaning there is a possibility that companies created a joint venture after the signing of the written contract. *See Ash*, 2014 WL 6682514, at *8 (denying motion to dismiss joint venture count because "two parties' *could* create a joint venture notwithstanding a prior written contract foreclosing such a possibility.") (emphasis in original).   That is, while the independent contractor agreement "specifically states that *it* does not constitute a joint venture, a subsequent course of conduct may have created such a joint venture agreement, and the [FAC] only references an 'agreement.'" *Id*. (emphasis in original).   And with that possibility, the more prudent course is to let the joint venture claim stand and revisit this claim at a later date. *Id*. ("Although the Undersigned is reluctant to say definitively that

the Court *cannot* view the Tour Operator Agreement at this stage, the more prudent course is to let the claim stand, at least for now.") (emphasis in original).

Turning to the substance of the allegations and whether they meet the elements of a joint venture claim, the FAC includes assertions on joint control over the excursion, shares in the excursion company's profits and losses, and an ownership interest in the tour operation. [D.E. 14 at ¶¶ 87-94]; *cf. Brown v. Carnival Corp., et al.*, 202 F. Supp. 3d 1332, 1341 (S.D. Fla. 2016) (granting motion to dismiss joint venture claim because "[t]here are no factual allegations to support Plaintiff's contention that Carnival and the Defendant Tour Operators had any interest in a common purpose, had joint control or right to control, had a right to share in the profits, or a duty to share in any losses."). Carnival maintains that these allegations are insufficient because they are too conclusory. But, Carnival never makes clear how they are inadequate when Plaintiff gave supporting facts in support of each element to state a claim for this theory of negligence liability. Carnival's motion to dismiss count 7 should therefore be **DENIED** because every allegation required to state a claim is included in the FAC, and the relevancy of the independent contractor agreement is an issue more appropriately considered on either a motion for summary judgment or at trial.

### H.    *Assumption of Duty (Count 12)*

The final issue is whether Plaintiff's allegations in count 12 should be dismissed. Plaintiff claims that Carnival was negligent when it voluntarily assumed a duty to render aid and then failed to discharge that duty with reasonable

care.  Plaintiff alleges, for example, that Carnival failed to adequately examine, diagnose, treat, and preserve the top of his finger.  And because of Carnival's negligence, Plaintiff states that he suffered physical pain, disfigurement, pain and suffering, and an aggravation of previously existing conditions.

Carnival contends that count 12 cannot stand because the FAC alleges duties that are not cognizable under federal maritime law.  The most glaring shortfall for this argument is that it never explains how the allegations in the FAC are predicated on duties of care that are not recognized under maritime law.  Carnival merely suggests that they are and then concludes that count 12 should be dismissed.  This type of reasoning is entirely unhelpful because it does nothing to grapple with the allegations presented.  So, given that Carnival has failed to present any substance in support of its position, the motion to dismiss count 12 should be **DENIED** for this reason alone.

Looking past the inadequacy of Carnival's argument, a ship owner generally owes no duty to practice medicine or to carry a physician on board.  *See De Zon v. Am. President Lines*, 318 U.S. 660, 668  (1943) (acknowledging that "there may be no duty to the seaman to carry a physician").  However, federal courts have recognized that the "assumption of duty" doctrine, as set forth in § 323 of the Second Restatement of Torts, "is applicable in maritime cases."  *Dunaway v. United States*, 2000 WL 64291, at *3 (E.D. La. Jan. 26, 2000) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955)).  Section 323 of the Second Restatement of Torts, which pertains to the negligent performance of undertaking to render

services, provides that:

> One who undertakes gratuitously or for consideration, to render
> services to another which he should recognize as necessary for the
> protection of the other person or things, is subject to liability to the
> other for physical harm resulting from his failure to exercise
> reasonable care to perform his undertaking, if:
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the
> undertaking.

*Disler v. Royal Caribbean Cruise, Ltd.*, 2018 WL 1916614, *4 (S.D. Fla. April 23,

2018) (quoting Restatement (Second) of Torts § 323); *Rojas v. Carnival Corp.*, 2015

WL 7736475, *6 (S.D. Fla. Nov. 30, 2015)).   This means that one who voluntarily

assumes a duty and then breaches that duty becomes liable to one who is injured

because of the breach.   *See Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th

Cir. 1967) ("When one voluntarily assumes a duty he is bound to perform it with

care and if done negligently, he is liable for damage resulting from such

negligence."); *Union Park Memorial Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla.

1996) ("Voluntarily undertaking to do an act that if not accomplished with due care

might increase the risk of harm to others or might result in harm to others due to

their reliance upon the undertaking confers a duty of reasonable care, because it

thereby 'creates a foreseeable zone of risk.'").[6]

   Plaintiff's allegations are sufficient to state a claim for an assumption of duty

because he claims that, in voluntarily rendering aid, Carnival failed to exercise

reasonable care.   And it is well-founded that "that cruise lines must exercise

---

[6]     This doctrine is sometimes referred to as the undertaker's doctrine because it
comes into play when a defendant voluntarily undertakes an action and must to do
so carefully as to *not* put others at an undue risk of harm.

reasonable care when medically treating passengers who are aboard their ships[.]"
*Rojas*, 2015 WL 7736475, at *6 (S.D. Fla. Nov. 30, 2015).  Carnival suggests that the
assumption of duty doctrine does not apply in this case because – if a ship owner
elects to provide physicians for its passengers – its only duty is to select physicians
who are competent and duly qualified.   This argument relies primarily on the
decision in *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1368 (5th Cir. 1988),
where the Fifth Circuit barred vicarious liability claims for the negligence of a
ship's doctor.   *See id.* ("[G]eneral maritime law does not impose liability under the
doctrine of respondeat superior upon a carrier or ship owner for the negligence of a
ship's doctor who treats the ship's passengers.").

But, the rule in *Barbetta* is not the law in this circuit because the Eleventh
Circuit has found that agency principles can be applied to impute liability in
maritime tort cases:

> We acknowledge, however, that other circuits have long barred
> vicarious liability in this particular context.  *See Barbetta,* 848 F.2d at
> 1372 ("[G]eneral maritime law does not impose liability under the
> doctrine of respondeat superior upon a carrier or ship owner for the
> negligence of a ship's doctor who treats the ship's
> passengers."); *accord The Great Northern,* 251 F. 826, 832 (9th Cir.
> 1918); *The Korea Maru,* 254 F. 397, 399 (9th Cir. 1918); *cf. Cummiskey
> v. Chandris, S.A.,* 895 F.2d 107, 108 (2d Cir. 1990) (per curiam)
> (citing *Barbetta* and "declin[ing] the invitation to break with maritime
> precedent" "on the facts before [the court]").   In effect, these cases
> stand for the sweeping proposition that no conceivable set of facts
> could *ever* justify holding a shipowner vicariously liable when a
> passenger receives negligent medical care aboard its ship.   We remain
> unpersuaded.

*Franza*, 772 F.3d at 1235.  In fact, the Eleventh Circuit has determined that courts
have long established that agency principles apply in maritime tort cases.  *Id.* at

1235-36 (citing *Matheny v. Tenn. Valley Auth.,* 557 F.3d 311, 315 (6th Cir. 2009) (accepting concession that tugboat owner was liable for third-party death caused by tugboat captain's negligence); *CEH, Inc. v. F/V Seafarer,* 70 F.3d 694, 705 (1st Cir. 1995) (holding shipowner "vicarious[ly] liabl[e]" where captain was shipowner's "agent" who sabotaged third-party lobstering operation); *McDonough v. Royal Caribbean Cruises, Ltd.,* 48 F.3d 256, 258 (7th Cir. 1995) (holding cruise line vicariously liable where steward pushed dolly over passenger's foot); *Jackson Marine Corp. v. Blue Fox,* 845 F.2d 1307, 1310 (5th Cir. 1988) (applying "general agency principles" to impute captain's fraud on third-party to shipowner); *De Los Santos v. Scindia Steam Navigation Co. Ltd.,* 598 F.2d 480, 489 (9th Cir. 1979) (explaining that shipowner could incur liability under respondeat superior if crewmembers knew of allegedly defective condition that injured plaintiff); *Pritchett v. Kimberling Cove, Inc.,* 568 F.2d 570, 579 (8th Cir. 1977) (holding boat owner "vicariously" liable where owner's "agent" negligently entrusted boat to minor who injured passengers in second boat); *Ira S. Bushey & Sons, Inc. v. United States,* 398 F.2d 167, 171–72 (2d Cir. 1968) (holding United States vicariously liable to third-party dry-dock owner after Coast Guardsman negligently caused dry-dock to sink)).

In light of these principles, where "nothing in our case law creates—or even suggests—a bright-line zone of immunity for the onboard negligence of a cruise ship's medical employees," Plaintiff has presented sufficient allegations to state a claim that Carnival's agents voluntarily rendered aid and did so negligently. *Franza*, 772 F.3d at 1235; [D.E. 14 at 146 ("Defendants breached their duties, and

were negligent because the excursion boat captain, the excursion boat staff, and Carnival's physicians, nurses, and other staff that were responsible for treating Plaintiff lacked adequate experience in treating injuries such as the ones Plaintiff suffered.")].   Carnival invites the Court to rely on out of circuit decisions or old district court opinions that follow a different rule, but we decline to do so where we are duty bound to follow the Eleventh Circuit.  And given that Plaintiff's allegations meet all the requirements of an assumption of duty theory of liability, nothing more is required to survive a motion to dismiss.   Accordingly, Carnival's motion to dismiss count 12 should be **DENIED**.

## *IV. CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that Carnival's motion to dismiss [D.E. 16] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 10th day of

September, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge